1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                         FOR THE DISTRICT OF ARIZONA
8
9  Michael Lawrence Harvey,        )   CV 10-207-TUC-CKJ (JCG)
                                   )
10        Petitioner,               )   **REPORT AND RECOMMENDATION**
                                   )
11 vs.                              )
                                   )
12                                  )
   Charles Ryan, et al.,            )
13                                  )
          Respondents.              )
14                                  )
                                   )
15

Petitioner Michael Lawrence Harvey, presently incarcerated at the Arizona State Prison Complex in Tucson, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Guerin for Report and Recommendation. Before the Court are the Petition for Writ of Habeas Corpus ("Petition") (Doc. 1), Respondents' Amended Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 13) and Petitioner's Reply (Doc. 20.) The Magistrate Judge recommends that the District Court deny the Petition.

### **FACTUAL AND PROCEDURAL BACKGROUND**

According to the Arizona Court of Appeals, the facts giving rise to Petitioner's conviction are as follows:[1]

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a state court shall be presumed to be correct."

On November 17, 1999, Petitioner visited an adult entertainment business with friends. Throughout the evening, Petitioner attempted to befriend one of the dancers. When the dancer left the business to go home, she experienced car trouble and Petitioner offered to help her. The dancer declined Petitioner's offer and asked a male friend to assist her. After an argument ensued between the male friend and Petitioner, Petitioner retrieved a gun from his vehicle and ordered the dancer into his car at gunpoint. Once in the car, Petitioner held the gun to the dancer's side and throat and threatened to hurt her. At that time, four police officers were leaving the business after having conducted a random bar check. After learning of Petitioner's actions, three of the officers approached and surrounded Petitioner's car. Petitioner began to drive very erratically and ultimately drove straight at two of the officers, who sustained injuries when the car hit them. Petitioner's car collided with a parked car and Petitioner attempted to escape on foot; the officers apprehended him. (Answer, Ex. A, pgs. 1-2.)

Petitioner was convicted by jury of three counts of aggravated assault, unlawful imprisonment and disorderly conduct. (Answer, Ex. A.) On August 27, 2001, the trial court sentenced Petitioner to a combination of concurrent and consecutive terms of imprisonment totaling 27.5 years. (*Id.*; Answer, Ex. Q.) Petitioner filed a Motion to Vacate Judgment, which was denied. (Answer, Ex. R.)

On March 7, 2003, Petitioner filed a direct appeal in which he raised two issues:

1. The trial court committed reversible error by refusing to admit the out-of-court statement of a witness concerning the defense of involuntary intoxication, and

2. The trial court denied Petitioner's right to a fair trial by refusing to admit expert witness testimony regarding PTSD.

(Answer, Ex. C.) On December 23, 2003, the Arizona Court of Appeals affirmed Petitioner's conviction and sentence. (Answer, Ex. A.) Petitioner petitioned the Arizona Supreme Court for review of the Court of Appeals' decision, raising the same two issues he presented in his appeal; the Arizona Supreme Court denied review without comment on June 29, 2004. (Answer, Exs. D & E.)

On July 8, 2004, Petitioner filed a Motion to Reconsider in the Arizona Supreme Court, arguing that in light of the recent decision in *Blakely v. Washington*, 542 U.S. 296 (2004), he should be permitted to supplement his petition for review or his case should be remanded to the appellate court. (Answer, Ex. F.) The Arizona Supreme Court denied the Motion without comment on September 21, 2004. (Answer, Ex. G.)

On September 30, 2004, Petitioner initiated collateral proceedings pursuant to Rule 32, Ariz. R. Crim. P. by filing his notice of post-conviction relief. (Answer, Ex. U.) On September 8, 2006, Petitioner filed his petition for post-conviction relief ("Rule 32 Petition"), in which he raised seven issues:

1. Petitioner's conviction should be reversed pursuant to Rule 32.1(e), Ariz. R. Crim. P. given new evidence;

2. Trial counsel was ineffective due to his:
   a. Failure to investigate potential witness Al Cheney;
   b. Failure to rebut accident reconstruction evidence;
   c. Failure to adequately investigate PTSD defense;
   d. Failure to argue that Petitioner's due process rights were violated when insufficient evidence supported his conviction;
   e. Omissions related to the requisite state of mind for a charge of assault against an officer;
   f. Various evidentiary errors at trial;
   g. Failure to request complete jury instructions regarding recklessness, criminal negligence, alternative theories of assault, reckless endangerment, reasonable doubt or acquittal;
   h. Failure to introduce rebuttal evidence that flight was not Petitioner's state of mind;
   i. Various errors made during closing arguments;
   j. Failure to present witness testimony supporting an involuntary intoxication defense;
   k. Failure to maximize the impact of defense witnesses;

3. Appellate counsel was ineffective due to his:
   a. Failure to argue that Petitioner's due process rights were violated when insufficient evidence supported his conviction;
   b. Failure to argue on appeal that the jury was not properly instructed as to the requisite state of mind for assault against a police officer;

4. Petitioner's due process rights were violated because insufficient evidence supported one charge of aggravated assault on an officer;

5. Petitioner's due process rights were violated because the jury was not properly instructed as to the requisite state of mind for assault against a police officer;

1. 6. Petitioner's due process rights were violated because the indictment and grand jury presentation did not specify an underlying assault, an essential element of the charge of assault on an officer; and

7. Petitioner's sentence violated *Blakely v. Washington*.

(Answer, Ex. H.) On March 8, 2007, the trial court denied relief on several of the issues raised in Petitioner's Rule 32 Petition and granted an evidentiary hearing on several issues. (Answer, Ex. J.) On November 1, 2007, after the evidentiary hearing, the trial court denied Petitioner's Rule 32 Petition. (Answer, Ex. M.)

On July 30, 2008, Petitioner filed a petition for review of the trial court's denial of his Rule 32 Petition in the Arizona Court of Appeals, in which he raised nine issues:

1. Trial counsel was ineffective due to his:
   a. Failure to present evidence that Petitioner engaged in "good driving;"
   b. Failure to argue that criminal negligence is a complete defense to the charge of reckless driving;
   c. Omissions related to the requisite state of mind for a charge of assault against an officer;
   d. Failure to present evidence mentioned in opening statements;
   e. Various errors made during closing arguments;
   f. Failure to object to jury instructions regarding flight and recklessness;
   g. Failure to present witness testimony supporting an involuntary intoxication defense;
   h. Failure to adequately investigate PTSD defense, and
   i. Failure to investigate potential witness Al Cheney;

2. Appellate counsel was ineffective due to his omissions related to the requisite state of mind for a charge of assault against an officer;

3. The trial court erred in denying summarily denying claims raised in Petitioner's Rule 32 Petition;

4. Petitioner's due process rights were violated because insufficient evidence supported one charge of aggravated assault on an officer;

5. Petitioner's due process rights were violated because the jury was not properly instructed as to the requisite state of mind for assault against a police officer;

6. Petitioner's due process rights were violated because the indictment and grand jury presentation did not specify an underlying assault, an essential element of the charge of assault on an officer;

7. The trial court erred by denying Petitioner's motion for change of counsel;

8.      The trial court erred in refusing Petitioner's discovery requests related
                to his Rule 32 Petition;

        9.      Petitioner's sentence violated *Blakely v. Washington*.

(Answer, Ex. N.) The Court of Appeals denied review on February 26, 2009. (Petition, Doc. 1-5, pgs. 36-48.) Petitioner filed a petition for review by the Arizona Supreme Court; the Arizona Supreme Court denied review without comment on June 30, 2009. (Answer, Exs. O & P.)

Petitioner presented the pending Petition to prison officials for mailing on April 9, 2010. (Doc. 1, pg. 25.) Petitioner presents 12 claims in the Petition:

**Ground 1:** The trial court violated Petitioner's right to a fair trial by refusing to admit a witness statement that allegedly supported Petitioner's defense of involuntary intoxication;

**Ground 2:** The trial court denied Petitioner's right to a fair trial by refusing to admit expert witness testimony regarding PTSD;

**Ground 3:** Petitioner was sentenced in violation of *Blakely v. Washington;*

**Ground 4:** Petitioner was denied effective assistance of counsel when trial counsel failed to present evidence that Petitioner engaged in "good driving;"

**Ground 5:** Petitioner was denied effective assistance of counsel when trial counsel failed to argue that criminal negligence is a complete defense to the charge of reckless driving;

**Ground 6:** Petitioner was denied effective assistance of trial and appellate counsel because both attorneys made omissions related to the requisite state of mind for a charge of assault against an officer;

**Ground 7:** Petitioner was denied effective assistance of counsel because trial counsel carried an unmanageable caseload and was not adequately prepared for trial;

**Ground 8:** Petitioner was denied effective assistance of counsel because trial counsel failed to adequately investigate PTSD defense;

**Ground 9:** Petitioner was denied effective assistance of counsel because trial counsel failed to rebut accident reconstruction evidence;

**Ground 10:** Petitioner's 5th and 14th Amendment rights were violated when the prosecution amended one of the counts charged during trial;

**Ground 11:** Petitioner was denied effective assistance of counsel because trial counsel failed to investigate potential witness Al Cheney;

**Ground 12:** Petitioner was denied effective assistance of counsel because trial counsel: (a) failed to present evidence mentioned in opening statements; (b)

failed to object to most of the defense witnesses appearing in prison uniforms; (c) failed to object to jury instruction regarding witnesses' prior felonies; (d) made various errors during closing arguments and (e) failed to object to jury instructions regarding flight and recklessness.

## **DISCUSSION**

**1. Timeliness**

Respondents contend that Petitioner's Petition is untimely. The Magistrate disagrees. Federal petitions for writ of habeas corpus filed by state prisoners are governed by a one-year statute of limitations period. *See* 28 U.S.C. § 2244(d)(1). The statute of limitations begins to run from the latest of: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

Petitioner's judgment became final on September 27, 2004, 90 days after the Arizona Supreme Court affirmed Petitioner's conviction on June 29, 2004.[2] *See Bowen v. Roe*, 188 F.3d 1157 (9th Cir. 1999) (holding that the period within which a petitioner could have sought direct review of his conviction includes the ninety-day period within which petitioner could have filed a petition for a writ of certiorari from the United States Supreme Court). The statute of limitations ran for three days, until it was tolled by the filing of Petitioner's Rule 32 Petition on September 30, 2004.[3] *See* 28 U.S.C. § 2244(d)(2) (when a properly filed

---

[2] Respondents acknowledge that this 90-day period is properly included in the calculation of timeliness (Answer, p. 7, citing Bowen v. Roe, *supra*), however, excluded it in their calculation.

[3] Although it does not affect the Court's analysis, the Court notes that Petitioner's July 8, 2004, Motion to Reconsider was not a "properly filed application for state post-conviction relief" and therefore did not toll the statute of limitations

state post-conviction relief request is pending, the proscribed one year statute of limitations is tolled). The statute remained tolled until the Arizona Supreme Court denied review on June 30, 2009. The statute then ran for 283 days, until Petitioner filed the pending Petition on April 9, 2010. In total, the 286 days that passed between the date Petitioner's judgment became final and the date the pending Petition was filed were within the one-year statute of limitations set by 28 U.S.C. § 2244(d)(1).

**2. Exhaustion**

**a. Legal Standard**

Ordinarily, before a federal court will consider the merits of a habeas petition, the petitioner must exhaust the remedies available to him in state court. 28 U.S.C. §2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971). First enunciated in *Ex parte Royall*, 117 U.S. 241 (1886), the exhaustion requirement is designed "not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). The requirement is grounded in principles of comity, and reflects a desire to protect state courts' role in the enforcement of federal law. *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (citation omitted). The requirement is also based on a pragmatic consideration that fully exhausted claims will usually be accompanied by a complete factual record once they reach federal court. *Rose v. Lundy*, 455 U.S. 509, 519 (1982).

A petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254. *See Rose*, 455 U.S. at 519. A petitioner must have also presented his claim in a procedural context in which its merits will be considered. *See Castille*, 489 U.S. at 351. A habeas petitioner's claims may be precluded from federal review on exhaustion grounds in either of two ways. First, a claim

---

pursuant to 28 U.S.C. § 2244(d)(2).

1 may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Second, the claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1. If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

**b.      Grounds 4. 5. 7. 9. 10, 12(a), 12(b) and 12(c) were not presented in the necessary state courts**.

Petitioner failed to present Grounds 7, 10, 12(b) and 12(c) in either his direct appeal or his Rule 32 proceedings. Petitioner presented Grounds 4, 5 and 12(a) only in his petition for review by the Arizona Court of Appeals of the trial court's denial of Petitioner's Rule 32 Petition. Petitioner presented Ground 9 only in his Rule 32 Petition. Consequently, Petitioner has not fairly presented Ground 4, 5, 7, 9, 10, 12(a), 12(b) and 12(c) and cannot raise those claims for the first time in federal court.[4] *See Rose*, 455 U.S. at 519 (stating that a petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254). Petitioner is now precluded by Arizona Rules of Criminal Procedure 32.2(a)(3) and 32.4 from obtaining relief

---

[4] Respondents contend that Petitioner exhausted Grounds 5 and 10 by raising them for the first time in his petition for review by the Arizona Court of Appeals of the trial court's denial of his Rule 32 Petition. However, claims presented for the first time in a petition for discretionary review are not exhausted. *See Casey v. Moore*, 386 F.3d 896, 916-18 (9th Cir. 2004); *accord Castille v. Peoples*, 489 U.S. 346, 351 (1989). Respondents also mistakenly describe Ground 10 as a "non-unanimous jury verdict" claim.

on Grounds 4, 5, 6, 7, 9, 10, 12(a), 12(b) and 12(c) in state court absent an applicable exception, which Petitioner does not assert. *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Thus, Grounds 4, 5, 6, 7, 9, 10, 12(a), 12(b) and 12(c) are technically exhausted but procedurally defaulted, absent a showing of cause and prejudice or a fundamental miscarriage of justice.

      **c.    Petitioner has not demonstrated cause and prejudice or made a colorable showing of actual innocence.**

A federal court may only grant review of a procedurally defaulted claim if petitioner makes a showing of cause and prejudice, *Netherland*, 518 U.S. at 162, or a colorable showing of actual innocence amounting to a "fundamental miscarriage of justice." *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992). To establish cause for a procedural default, a petitioner must show an external impediment which rendered Petitioner unable to comply with the procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show prejudice, the petitioner bears the burden of demonstrating that the error worked to his substantial disadvantage, infecting the entire trial with constitutional error. *Carrier*, 477 U.S. at 488. If petitioner cannot meet one of the requirements, it is unnecessary for federal courts to address the other requirement. *United States v. Frady*, 456 U.S. 152, 168 (1982). Petitioner may also be granted federal review if he can demonstrate a fundamental miscarriage of justice. A fundamental miscarriage of justice results when the petitioner can demonstrate that a constitutional error caused the conviction of one who is actually innocent. *Carrier*, 477 U.S. at 496.

Petitioner has not alleged cause and prejudice or actual innocence. Accordingly, Grounds 4, 5, 6, 7, 9, 10, 12(a), 12(b) and 12(c) were not properly exhausted and the Court need not consider the merits of those claims.

### d. Exhausted claims

Petitioner properly exhausted Grounds 1 and 2 by fairly presenting them in his direct appeal.[5] Petitioner properly exhausted Grounds 3, 6, 8, 11, 12(d) and 12(e) by fairly presenting them in his Rule 32 Petition and in his petition for review by the Arizona Court of Appeals of the trial court's denial of his Rule 32 Petition.[6] Accordingly, the Court will consider the merits of these claims.

## 3. Merits

### a. Legal Standard

On habeas review, a state court's findings of fact are entitled to a presumption of correctness when fairly supported by the record. *Wainwright v. Witt*, 469 U.S. 412, 426 (1985). The presumption of correctness also applies to a state appellate court's findings of fact. *Sumner v. Mata*, 449 U.S. 539, 546 (1981). The question presented in a state prisoner's petition for a writ of habeas corpus is "whether the state proceedings satisfied due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991).

Federal courts may entertain a state prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. *Reed v. Farley*, 512 U.S. 339 (1994). General improprieties occurring in state proceedings are cognizable only if they resulted in fundamental unfairness and consequently violated the petitioner's Fourteenth Amendment right to due process. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas court to reexamine

---

[5] Respondents contend that Petitioner failed to present Ground 2 as a federal claim on direct appeal. The Magistrate disagrees. Petitioner repeatedly invoked the Sixth and Fourteenth Amendments to the United States Constitution and cited to federal law in his direct appeal. (Answer, Ex. C, pgs. 59-70.)

[6] Respondents contend that Petitioner's *Blakely* argument (Ground 3) was found precluded under state law by the trial court and was therefore procedurally defaulted. The Magistrate disagrees with Respondents' interpretation of the trial court's decision. The trial court held: "To the extent [Petitioner] attempts to assert a significant change in the law pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), the trial court correctly disagreed. As the trial court noted, once it found one *Blakely*-compliant or -exempt aggravating factor, it was entitled to find and consider additional aggravating factors." (Answer, Ex. B.)

state court determinations on state law questions."); *Bonin*, 77 F.3d at 1158. The Supreme Court has held in the habeas context that "this Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). The provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) govern this case and pose special burdens. *Chein v. Shumsky,* 373 F.3d 978, 983 (9th Cir. 2004) (en banc). Under AEDPA, when reviewing a state criminal conviction, a federal court may grant a writ of habeas corpus only if a state court proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under § 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or "if the state court confronts a set of facts that are materially indistinguishable from" a Supreme Court decision but "nevertheless arrives at a result different from" that precedent. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A state court decision is an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle" from a Supreme Court decision "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. In considering whether a state court has unreasonably applied Supreme Court precedent, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411; *Bell v. Cone,* 535 U.S. 685, 694 (2002). In conducting habeas review, we "presum[e] that state courts know and follow the law." *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002).

**b.     Ground 1**

In Ground 1, Petitioner alleges that the trial court violated Petitioner's right to a fair trial by refusing to admit a witness statement that allegedly supported Petitioner's defense of involuntary intoxication. According to Petitioner, the trial court erroneously denied Petitioner's counsel's motion to admit the out-of-court statements of Theodore Johnson, who reportedly added LSD to Petitioner's drink on the night of the offense.

When applying the AEDPA and reviewing whether a state court decision is contrary to federal law, this court must look to the state's last reasoned decision as the basis for its judgment. *See Avila v. Galaza*, 297 F.3d 911, 918 & n. 6 (9th Cir. 2002). Thus, this Court must consider whether the Arizona Court of Appeals' December 23, 2003 decision involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Court of Appeals correctly applied clearly established federal law. The Court of Appeals properly relied on United States Supreme Court precedent, *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038 (U.S. 1973), which holds that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." (Answer, Ex. A.) The Court of Appeals then noted that the hearsay statements at issue in *Chambers*, unlike those at issue in Petitioner's case, were offered under circumstances that provided considerable assurance of their reliability. The Court of Appeals reasoned that because Mr. Johnson's statements were properly excluded as unreliable, the trial court's decision did not violate *Chambers*.

The Court of Appeals' application of federal law to the facts before it was reasonable. The Court of Appeals noted that Johnson's purported statements were not corroborated by other evidence. No witness testified that Petitioner had acted as if he were hallucinating, and Petitioner's statements during and after his arrest did not contain any claim that he was under the influence of drugs. Even if Petitioner's actions on the night of the offense appeared to be drug-induced, they could have been attributed to the cocaine and alcohol that the evidence

- 12 -

showed Petitioner possessed. In addition, Johnson offered contradicting statements, first claiming that he put LSD in Petitioner's drink, then claiming that he put LSD in his own drink but Petitioner accidentally drank it. Johnson was also friends with Petitioner, a factor which weighs against the reliability of his statement. Accordingly, Petitioner's claim with respect to Ground 1 is without merit.

### c. Ground 2

In Ground 2, Petitioner alleges that the trial court denied Petitioner's right to a fair trial by refusing to admit expert witness testimony regarding PTSD. Petitioner claims that he should have been permitted to present testimony from Dr. St. Germaine regarding PTSD suffered by Petitioner as a result of an event that occurred in June 1999. The trial court excluded the evidence, considering it evidence of diminished capacity (short of insanity) and therefore not relevant as an affirmative defense or to negate the mens rea of the crime charged. (Answer, Ex. A.)

The Court of Appeals decision was not contrary to clearly established federal law. The Court of Appeals did not rely on federal law in its decision, and instead relied on *State v. Mott*, 931 P.2d 1046, 1051 (Ariz. 1997), which holds that "[b]ecause the legislature has not provided for a diminished capacity defense, we have since consistently refused to allow psychiatric testimony to negate specific intent." The holding in *Mott* has been upheld by the United States Supreme Court. *See Clark v. Arizona*, 548 U.S. 735 (2006).

The Court of Appeals' application of federal law to the facts before it was reasonable. Petitioner sought to admit testimony from Dr. St. Germaine that Petitioner suffered from PTSD as a result of witnessing a friend's homicide, and that Petitioner's PTSD was triggered on the night of the offense during the argument between Petitioner and the dancer's friend. The appellate court correctly concluded that this testimony constituted evidence of a mental disorder short of insanity and that it was therefore not relevant as either an affirmative defense or to negate the *mens rea* element of a crime.

### d. Ground 3

In Ground 3, Petitioner contends he was sentenced in violation of *Blakely v. Washington*. This argument was presented to the trial court in Petitioner's Rule 32 Petition and to the Arizona Court of Appeals in Petitioner's petition for review; thus the Court looks to the Arizona Court of Appeals' February 26, 2009 decision as the state's last reasoned decision and the basis for its judgment. *See Avila v. Galaza*, 297 F.3d 911, 918 & n. 6 (9th Cir. 2002).

Petitioner contends that his sentence violated *Blakely* because the trial court considered facts not determined by a jury when enhancing Petitioner's sentence. The Court of Appeals concluded that Petitioner's sentence did not violate *Blakely* because aggravation of a sentence by a prior conviction is Blakely-exempt, and once an aggravating factor is found which is *Blakely*-exempt, the Sixth Amendment allows the Court to find additional factors by a preponderance of the evidence.

The Court of Appeals' decision was not contrary to federal law, as it correctly recited the legal standard set forth in *Blakely v. Washington*. In *Blakely*, the United States Supreme Court reaffirmed its holding, first expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that "*other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 542 U.S. at 301 (emphasis added). Thus, *Blakely* excludes prior convictions from its holding that aggravating factors must be found by a jury in order to be considered during sentencing. The United States Supreme Court also permits a trial court to consider other aggravating factors once proof of a prior conviction is established. The rule announced in *Apprendi* and reaffirmed in *Blakely* applies to fact-finding that increases the penalty for a crime "beyond the statutory maximum." *Blakely*, 542 U.S. at 301. As the *Apprendi* Court explained, "nothing in [the history of the right to jury trial] suggests that it is impermissible for judges to exercise discretion--taking into consideration various factors relating both to offense and offender--in imposing a judgment *within the range prescribed by statute*." *Apprendi,* 530 U.S. at 481 (emphasis added). The Court reinforced

1 this conclusion two years later in *Harris v. United States*, 536 U.S. 545, 558 (2002). In a plurality opinion authored by Justice Kennedy, the Court stated that while a jury must find those facts that establish the outer limits of a sentence, facts that limit a judge's sentencing discretion within the prescribed statutory range, such as those that compel imposition of a mandatory minimum sentence, may be found by judges rather than juries. *Harris*, 536 U.S. at 567. Thus, "[j]udicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments." *Id*. at 558. Justice Kennedy specifically noted that precedent permitted judges to make factual findings regarding a victim's characteristics, including age and relationship to the defendant. *Id*. at 567-68.

The Court of Appeals reasonably applied the appropriate federal law to the facts before the court. Petitioner admitted to a prior conviction during his sentencing/mitigation hearing. (Answer, Ex. Q.) Petitioner's prior conviction was *Blakely*-exempt. Because Petitioner admitted to a prior conviction, his conviction for unlawful imprisonment, aggravated assault, aggravated assault on a peace officer and disorderly conduct carried sentencing ranges of 0.33-2 years, 5-15 years, 7-21 years and 0.33-2 years, respectively. *See* A.R.S. §§13-702 and 13-704. Petitioner's terms for each offense were all within statutory range; Petitioner received a combination of concurrent and consecutive terms of imprisonment totaling 27.5 years. Thus, to the extent that the sentencing judge aggravated Petitioner's sentence based on Petitioner's danger to the community, harm to the victim, Petitioner's drug use and Petitioner's failure to rehabilitate himself, the application of those aggravating factors was within the sentencing range and therefore did not violate *Blakely*. Accordingly, the Magistrate Judge recommends denying the Petition with respect to Ground 3.

  **e.  Ground 6**

In Ground 6, Petitioner contends that he was denied effective assistance of trial and appellate counsel because both attorneys made omissions related to the requisite state of mind for a charge of assault against an officer. Specifically, Petitioner alleges that his

counsel should have argued that Petitioner could not be convicted of aggravated assault on a police officer because he did not know that one of the officers hit by Petitioner's car was a police officer. The Court of Appeals rejected Petitioner's argument on the ground there was no legal merit to Petitioner's "state of mind" argument and therefore counsel was not deficient for failing to raise the argument.

The Court of Appeals applied the correct federal law, relying on *Strickland v. Washington*, 466 U.S. 668, 687 (1984), clearly established precedent regarding claims for ineffective assistance of counsel. Pursuant to the Sixth Amendment of the United States Constitution, a criminal defendant has a right to "effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The *Strickland* standard for ineffective assistance of counsel has two components. A defendant must first demonstrate that counsel's performance was deficient, *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment. 466 U.S. at 687. It requires the defendant to show that counsel's conduct "fell below an objective standard of reasonableness." 466 U.S. at 687-688. Second, a defendant must show that the mistakes made were "prejudicial to the defense," that is, the mistakes created a "reasonable probability that, but for [the] unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Counsel's performance is strongly presumed to fall within the ambit of reasonable conduct unless Movant can show otherwise. *Id.* at 689-90.

The Court of Appeals reasonably applied *Strickland* to the facts of Petitioner's case. Petitioner was charged with aggravated assault on a peace officer pursuant to A.R.S. § 13-1204(A)(2) and (C). Subsection (A)(2) provides: "A person commits aggravated assault if the person commits assault[7] ... [using] a deadly weapon or dangerous instrument." Petitioner was charged with using his vehicle as a deadly weapon in violation of this provision. Section 13-1204(C) provides that aggravated assault under subsection (A)(2) is a class two felony

---

[7] "Assault" is defined as "intentionally, knowingly or recklessly causing any physical injury to another person." *See* A.R.S. § 13-1203(A)(1).

- 16 -

if "committed on a peace officer while the officer is engaged in the execution of any official duties." Petitioner was not charged pursuant to A.R.S. § 13-1204(A)(8)(a), which aggravates a charge of assault based on a defendant "knowing or having reason to know that the victim is ... [a] peace officer, or a person summoned and directed by the officer while engaged in the execution of any official duties." Accordingly, the prosecutor was not required to prove that Petitioner knew he was injuring a police officer when he drove his car into the officer. There was no legal merit to Petitioner's argument concerning his knowledge of the officer's identity; counsel was not deficient for failing to present such argument. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure to take futile action can never be deficient performance).

**f.      Ground 8**

In Ground 8, Petitioner contends that he was denied effective assistance of counsel because trial counsel failed to adequately investigate Petitioner's PTSD defense. Specifically, Petitioner contends that trial counsel should have interviewed Dr. St. Germaine and obtained police reports and photographs related to the incident that caused Petitioner to suffer from PTSD. For the reasons stated in Section 3(c) above, evidence of PTSD was not admissible at trial. Accordingly, Petitioner's trial counsel was not deficient for failing to investigate a possible PTSD defense.

**g.      Ground 11**

In Ground 11, Petitioner claims that he was denied effective assistance of counsel because trial counsel failed to investigate potential witness Al Cheney. Petitioner claims that if Al Cheney had been called to testify, he would have admitted that he lied when he told a bouncer at the nightclub that Petitioner was carrying a gun and would have provided testimony challenging the credibility of the victim.

The Court of Appeals considered this claim within the context of *Strickland*; its application of the *Strickland* standard was reasonable. The Court noted that Petitioner's argument relies on an unsworn letter purportedly written by Cheney. During an interview with Petitioner's Rule 32 counsel, Cheney stated that the letter was false, that he wrote it

because he had been threatened, and that he would not testify consistently with it. Also during the interview, Cheney offered testimony consistent with the victim's trial testimony. Even if trial counsel had investigated Cheney, it does not appear that Cheney would have offered reliable or exculpatory testimony. Accordingly, trial counsel was not deficient for failing to investigate Cheney as a potential witness.

### h. Ground 12(d)

In Ground 12(d), Petitioner alleges that trial counsel was ineffective due to various errors made during closing arguments.[8] Of these alleged errors, only two were raised in both Petitioner's Rule 32 Petition and his petition for review to the Arizona Court of Appeals: (1) that trial counsel provoked objections by trying to explain why certain defenses were not presented, and (2) trial counsel failed to summarize trial testimony demonstrating that Petitioner did not realize police had arrived on the scene because the officers did not activate their overhead lights.

The Court of Appeals considered this claim within the context of *Strickland*; its application of the *Strickland* standard was reasonable. The Court of Appeals correctly concluded that while Petitioner has noted points that he believes would have been persuasive during closing argument, Petitioner offers nothing to show that the omissions constituted deficient performance or that counsel's failure to argue the points mentioned affected the outcome of the case. Based on the significant incriminating evidence presented against Petitioner at trial, the Court cannot conclude that but for trial counsel's alleged omissions during closing argument, the result of the proceeding would have been different.

---

[8] Specifically, Petitioner contends that trial counsel provoked objections by trying to explain why certain defenses were not presented, and failed to summarize trial testimony demonstrating that: (i) Petitioner did not realize police had arrived on the scene because the officers did not activate their overhead lights; (ii) Petitioner could not hear; (iii) one officer testified that he did not think Petitioner meant to hit the officers; (iv) one officer's testimony regarding whether Petitioner was steering the vehicle was speculation; (v) evidence suggesting that officers happened to be standing in the way as the vehicle moved in a circle; and (vi) one officer suffered from "auditory shut-down."

i. **Ground 12(e)**

In Ground 12(e), Petitioner contends his trial counsel was ineffective for failing to object to jury instructions regarding flight and recklessness. The Court of Appeals considered this claim within the context of *Strickland*; its application of the *Strickland* standard was reasonable. There was no legal basis for Petitioner's counsel to object to a jury instruction regarding flight. Some evidence presented at trial suggested that Petitioner attempted to flee the scene. Although there may have been other evidence negating an inference of flight, under Arizona law "a party is entitled to an instruction on any theory of the case reasonably supported by the evidence." *State v. Shumway*, 672 P.2d 929, 932 (Ariz. 1983). Counsel cannot be deemed deficient for failing to make an argument that has no legal merit.

Similarly, Petitioner's claim that his trial counsel was ineffective for failing to request a jury instruction on negligence or criminal negligence is also without merit. In order to prove the aggravated assault allegations, the state was required to show that Petitioner acted intentionally, knowingly or recklessly. *See* A.R.S. § 13-1203. Negligence or criminal negligence is not a defense to a charge of reckless assault, it is merely a less culpable mental state than the "recklessness" *mens rea* required for a conviction under A.R.S. § 13-1203. While trial counsel may have argued that the state failed to prove that Petitioner acted only negligently, and not with the requisite intent, trial counsel was not deficient for failing to request a jury instruction on a mental state inapplicable to the charges at issue. Accordingly, Ground 12(e) is without merit.

**CONCLUSION**

Based on the foregoing, the Magistrate Judge recommends that the District Court enter an order DENYING the Petition for Writ of Habeas Corpus.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV-10-207-TUC-CKJ**.

The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner and counsel for Respondents.

DATED this 28th day of September, 2011.

Jennifer C. Guerin
United States Magistrate Judge